IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | |
| | | 22-cv-462-jdp |
| CHRISTOPHER DROST and JAMES HAFENER, | | |
| | Defendants. | |

---

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, without counsel, is currently incarcerated at Waupun Correctional Institution. Helmueller alleges that St. Croix County deputies humiliated him by transporting him to jail while he was completely naked. Defendants moved for summary judgment for Helmueller's failure to exhaust his administrative remedies. Dkt. 31. I set the case for an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve a factual dispute over whether jail officials blocked Helmueller from filing a grievance upon his return to the jail. Dkt. 58. I held that hearing on April 23, 2024, with testimony provided by Helmueller and Lieutenant Joseph Kormanik and both sides submitting other evidence. After considering the testimony and other evidence, I find that Helmueller had administrative remedies available to him but he did not file a timely grievance about his transport. So I will grant defendants' motion for summary judgment and dismiss the case.

BACKGROUND

Helmueller's claims arise from his October 27, 2021 transport by defendants from Mendota Mental Health Institute (where a state court had ordered him taken for a competency

evaluation) to the St. Croix County Jail. Helmueller alleges that he was completely naked during the transport and only partially covered by a blanket. Partway through the trip, Helmueller told defendants that they had not fastened his seat belt. When defendants stopped the van to fasten the seat belt, they opened both of the van's sliding doors, leaving Helmueller's nudity even more visible to passers-by. Upon Helmueller's return to the jail, he was placed in segregation on administrative confinement.

ANALYSIS

Jail regulations state that a prisoner must file a grievance within 24 hours of the incident. Dkt. 33-1, at 33. The parties agree that Helmueller did not file a grievance within a day after his transport to the jail. In the parties' original briefing, Helmueller stated that he was unable to file a grievance because he was locked in his cell for about two days without access to the kiosk system, and staffers denied him paper forms when he asked. Defendants stated that Helmueller did have access to the grievance system, either through electronic or paper means. I held a *Pavey* hearing to resolve this factual dispute.

At the hearing, Lieutenant Kormanik testified that inmates on administrative confinement had at least an hour a day that they could leave their cells; on the specific block Helmueller was located that meant that he could go outside his cell to use the kiosk system to enter grievances. Defendants produced a shift log showing that Helmueller had out-of-cell time the afternoon of October 28, 2021: it includes entries for 3:00 p.m. stating "Helmueller out for his hour" and another for 4:04 p.m. stating "Helmueller back in his cell." Dkt. 71-1, at 2, 3. Helmueller testified that he did not remember being able to leave his cell for the first few days after his return to the jail, but that he was not completely certain about that. I will credit

2

the jail's contemporaneous record of activities over Helmueller's uncertain memory of events; I find that Helmueller had out-of-cell time between 3:00 and 4:00 p.m. on October 28, at which time he could have filed a grievance.

That resolves the specific factual issue necessitating the *Pavey* hearing. But Helmueller presents four reasons for excusing him from the exhaustion requirement notwithstanding this factual finding.

First, Helmueller filed a supplemental brief arguing that he was not required to exhaust the jail's administrative remedies because he was not in the custody of the jail when defendants allegedly violated his constitutional rights. Dkt. 72. He adds that defendants were not correctional officers at the jail or otherwise staff subject to the supervision of the jail administrator; rather, they were investigators in the sheriff's office. Under the relevant portion of the Prison Litigation Reform Act (PLRA), prisoners may not bring claims "with respect to prison conditions" unless they first exhaust available administrative remedies. 42 U.S.C. § 1997e(a). Defendants responded with a brief citing various cases in which courts assumed that the PLRA's exhaustion requirement applied to claims occurring outside the jail's or prison's walls, including during transport. *See* Dkt. 75 (citing among other cases *Fluker v. Cnty. of Kankakee*, 945 F. Supp. 2d 972, 986 (C.D. Ill.) (claim about officer's failure to secure prisoner with a seatbelt during transport about "prison conditions" subject to the PLRA), *aff'd*, 741 F.3d 787 (7th Cir. 2013)).

I agree with defendants' general proposition that claims regarding a jail or prison transport are claims about "prison conditions" that must be exhausted. But defendants did not directly address Helmueller's specific argument that he wasn't actually under the jail's custody because he was being transported from a court-mandated competency evaluation under Wis.

3

Stat. § 971.14. Under that statute the sheriff is tasked with transporting the defendant to and from the jail to the inpatient facility where the evaluation is conducted. Section 971.14(2)(d). Helmueller contends that reference to the "sheriff" in this statute means that his custodian during the transport wasn't the jail.

I disagree with Helmueller's contention. It's undisputed that Helmueller was a detainee at the jail before and after being sent to Mendota. In Wisconsin, sheriffs are tasked with running county jails. Wis. Stat. § 59.27 ("The sheriff of a county shall . . . [t]ake the charge and custody of the jail maintained by the county . . . ."). So there was no change in Helmueller's custody by virtue of the judge's order to send him to Mendota. I am aware of no authority suggesting that the participation of officers not ordinarily stationed at the jail in a transport exempts claims against them from the PLRA's exhaustion requirement. Regardless the ordinary job duties of the officers involved in the incident, Helmueller was a jail detainee during the transport, so the exhaustion requirement applies to his claims.

Second, Helmueller makes the related argument that he filed a grievance against defendants directly to the sheriff's office instead of through the jail's process. He testified that about a week after the incident he asked an officer about how to file a complaint against a sheriff's office employee not working directly for the jail, and she told him to file a complaint with the sheriff, which Helmueller did. That grievance, Dkt. 59-1, was submitted by Helmueller to someone at the jail no earlier than November 9, 2021. It was stamped received by both the sheriff's office and the St. Croix County clerk of court, but Helmueller never received a response.

This argument fails because I have already concluded that Helmueller, as a jail detainee, was required to use the jail's formal grievance process to exhaust his administrative remedies.

Nothing in the jail handbook suggests that a detainee may send a complaint directly to the sheriff instead of following the grievance procedures. If what Helmueller means is that he was led to believe by staff that he could file his grievance this alternate way, it is true that courts have excused a prisoner's failure to complete the exhaustion process in circumstances in which prison officials or the applicable regulations provide unclear or confusing directions to prisoners. *See Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (prison officials that fail to "clearly identif[y]" the proper route for exhaustion cannot fault prisoner for failure to make the correct choice); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." (citation omitted)). That's not what happened here. The jail handbook explicitly gave Helmueller 24 hours to exhaust his grievance. More than a week after that deadline expired, Helmueller got perhaps confusing instructions from a jail official about sending a complaint directly to the sheriff. But those instructions didn't cause him to miss his grievance deadline; that deadline had long passed by the time he spoke with the officer. So those instructions cannot excuse his failure to file a grievance during his out-of-cell time.

Third, Helmueller argues that administrative remedies were not available to him because he didn't have access to the kiosk until his out-of-cell time at 3:00 p.m. on October 28, more than 24 hours after the events forming the basis of his claims. Helmueller stated that the relevant events were his placement into the transport van at 11:45 a.m. and the event partway through the trip (near Eau Claire, about an hour away from the jail) where defendants allegedly exposed Helmueller to passers-by by opening both side doors of the van. But that is not the entire scope of Helmueller's claims: he stated that he was transported naked for the

5

*entire* trip. It is undisputed that the trip didn't end until about 3:43 p.m. on October 27, when the transport arrived at the jail. Helmueller's out-of-cell time on October 28 was within 24 hours of the conclusion of the transport incident, so he could have used the kiosk system to file a grievance within 24 hours in accordance with the jail rules.

Fourth, Helmueller testified that he didn't file a jail grievance because he was fearful of retaliation by prison staff. He stated that months earlier an officer used excessive force against him for an incident in which he accidentally touched the officer's weapon. This excuse simply isn't credible in light of the dozens of other grievances that Helmueller filed while at the jail.

Ultimately, defendants have proven by the preponderance of the evidence that Helmueller had administrative remedies available to him yet failed to exhaust those remedies. I will grant defendants' motion for summary judgment and dismiss the case without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

## ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment on exhaustion grounds, Dkt. 31, is GRANTED.

2.  Plaintiff's remaining motions are DENIED as moot.

3.  The clerk of court is directed to enter judgment accordingly and close the case.

Entered April 26, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

6